**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**STEPHEN KRAMER,**

                               **Plaintiff,**

                   **v.**                                              **1:01-CV-286**
                                                                          **(FJS/RFT)**

**STUART SCHLOSS,**

                                 **Defendant.**
_____

**APPEARANCES**                                           **OF COUNSEL**

**GANZ, WOLKENBREIT &**                   **ROBERT E. GANZ, ESQ.**
**FRIEDMAN, LLP**
1 Columbia Circle
Albany, New York 12203
Attorneys for Plaintiff

**DREYER BOYAJIAN LLP**                    **CRAIG M. CRIST, ESQ.**
75 Columbia Street
Albany, New York 12210
Attorneys for Defendant

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

      Plaintiff alleges that Defendant breached a fiduciary duty that he owed to him by fraudulently concealing the status of acquisition negotiations between FinServ Healthcare Systems, Inc. ("FinServ") and The TriZetto Group ("TriZetto") during the parties' negotiations leading to the execution of the Option Agreement and Final Agreement between them and that this breach resulted in Plaintiff not receiving adequate compensation for his shares of FinServ.

Currently before the Court is Defendant's motion, pursuant to Rules 42(b) and 37(c)(1) of the Federal Rules of Civil Procedure, for the bifurcation of the issues of liability and damages and for the preclusion of Plaintiff's expert reports. In addition, Plaintiff has filed a cross-motion for permission to use the testimony of expert witnesses Robert Seaman and Edward Romanzo and to use the 1988 federal felony conviction of Franc Richardson, the president of FinServ, to impeach his credibility at trial.

## II. BACKGROUND

Plaintiff and Defendant were shareholders in FinServ, a private New York corporation. Defendant was the majority shareholder and held 63.09% of the issued stock; Plaintiff was the minority shareholder and held 36.91% of the issued stock.

Relations between the parties deteriorated in 1999. At that time, both Plaintiff and Defendant were allegedly marketing the company to third parties, and they held discussions with respect to Defendant purchasing Plaintiff's minority shares. In the late summer or early fall of 1999, Defendant eliminated Plaintiff from his operational roles as Vice President, Secretary, and Treasurer. On October 27, 1999, Defendant called a Special Shareholder Meeting and voted to eliminate Plaintiff as a Director.

Following the October shareholders' meeting, Plaintiff and Defendant negotiated an "all cash" buy-out option agreement. On November 12, 1999, the parties, both represented by counsel, entered into an option agreement whereby Defendant had the option to purchase Plaintiff's minority shares for $225,000 (later negotiated to $240,000).

Defendant exercised the option, and the parties entered into a final agreement on

December 16, 1999, for a purchase price of $240,000, three computers, and a 1993 Jeep Grand Cherokee.

On December 22, 1999, Defendant sold his 100% interest in FinServ to TriZetto, a public corporation, for a gross total of $5.8 million.

On December 28, 2000, Plaintiff filed a Demand for Arbitration and an Arbitration Complaint with the American Arbitration Association. Defendant subsequently commenced a special proceeding pursuant to N.Y. C.P.L.R. Article 75 to stay the arbitration. By Order dated February 15, 2001, New York State Supreme Court Judge Frank B. Williams granted Defendant's petition to stay the arbitration permanently, without prejudice, pending Plaintiff's commencement of a plenary action. Plaintiff filed the present action on February 26, 2001, claiming fraudulent concealment and breach of fiduciary duty.

Both parties filed motions for summary judgment. On July 31, 2002, this Court denied Plaintiff's motion and granted Defendant's motion on the basis that the final option agreement and release clauses incorporated into that agreement applied to the charges that Plaintiff had alleged in his complaint.

Plaintiff appealed this Court's decision, and on February 27, 2004, the Second Circuit Court of Appeals held that the releases that Plaintiff executed did not require the dismissal of Plaintiff's complaint pursuant to *Blue Chip Emerald LLC v. Allied Partners, Inc.*, 299 A.D.2d 278 (1st Dep't 2002), thereby vacating this Court's judgment and remanding the case for further proceedings. *See Kramer v. Schloss,* No. 02-9057, 2004 WL 362935, *2 (2d Cir. Feb. 27, 2004) (unpublished). Defendant submitted a request for leave to rehear or, in the alternative, for rehearing *en banc*, which the Second Circuit denied.

At the end of May 2004, both parties renewed their motions for summary judgment. In a Memorandum-Decision and Order dated November 30, 2004, this Court denied both motions for summary judgment and permitted Defendant to conduct one non-party deposition. *See* Dkt. No. 78. When Plaintiff's counsel received the Clerk's ECF notification of the Court's Memorandum-Decision and Order, he noticed that the case was marked for a non-jury trial.

On February 9, 2005, Plaintiff made a motion to allow the late filing of his jury demand which was filed almost four years late. The Court, by Order dated June 8, 2005, denied Plaintiff's motion.

On May 5, 2005, Plaintiff served a notice of intention to use two expert witnesses, Robert Seaman and Edward Romanzo. In response, Defendant filed a motion to preclude Plaintiff from using these witnesses. Also included in Defendant's papers was a motion to bifurcate the issues of liability and damages. On June 9, 2005, Plaintiff filed a cross-motion seeking permission from the Court to use the testimony of his expert witnesses.

Currently, a bench trial of this matter is scheduled to commence on August 9, 2005, in Albany, New York.

### III. DISCUSSION

**A.    Defendant's motion to bifurcate the issues of liability and damages**

Rule 42(b) of the Federal Rules of Civil Procedure provides that bifurcation is appropriate "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy . . . ." Fed. R. Civ. P. 42(b). The decision to bifurcate a trial rests in the sound discretion of the trial court. *See Katsaros v. Cody,* 744 F.2d 270, 278 (2d

Cir. 1984) (quotation omitted). However, despite the wide latitude afforded the court under Rule 42(b), bifurcation remains the exception rather than the rule. *See Monaghan v. SZS 33 Assocs., L.P.,* 827 F. Supp. 233, 245 (S.D.N.Y. 1993) (citation omitted).

The moving party bears the burden of establishing that bifurcation is warranted. *See Ake v. Gen. Motors Corp.,* 942 F. Supp. 869, 877 (W.D.N.Y. 1996) (citation omitted). Courts should consider the following five factors to determine whether bifurcation is appropriate: (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlaps; and (5) whether the party opposing bifurcation will be prejudiced if it is granted. *See Monaghan,* 827 F. Supp. at 245 (quotation and other citations omitted). In addition, the court should consider the effects bifurcation will have on judicial economy. *See Carson v. City of Syracuse,* No. 92-CV-777, 1993 WL 260676, *2 (N.D.N.Y. July 7, 1993) (citation omitted); *Ricciuti v. New York City Transit Auth.,* 796 F. Supp. 84, 86 (S.D.N.Y. 1992).

It is clear, and both parties agree, that the issues of liability and damages in this case are significantly different from each other. The issues surrounding the question of liability include (1) whether Defendant fraudulently induced Plaintiff to sell his shares of FinServ; (2) whether the option agreement is valid; and (3) whether Plaintiff was aware of the proposed sale of FinServ to TriZetto before the execution of the parties' option agreement. These issues have little, if any, overlap with the determination of damages to which Plaintiff would be entitled if he prevails on his claims.

Second, this case will be tried before the Court. Since this is the case, there is no

significant risk of confusion of the fact-finder. The Court is more than able to separate the facts it will use to determine liability from the facts it will use to determine damages if it finds liability.

In addition, all aspects of discovery have been completed in this case. Neither party maintains that the status of discovery supports its position on bifurcation. *See Standard Metals Corp. v. Tomlin,* No. 80 Civ. 2983, 1982 WL 1300, *3 (S.D.N.Y. Apr. 14, 1982) ("While [the posture of discovery] may be a significant element when one party has not concluded discovery . . . , it is much less important when as in the instant matter, it has been completed." (citation omitted)).

Next, defendant asserts, and Plaintiff agrees, that the documentary and testimonial evidence relating to liability and damages are completely unrelated and separate. Therefore, it does not appear that the parties would need to duplicate testimony or evidence with regard to the damages issue that they presented on the issue of liability.

Plaintiff next asserts that, if the Court bifurcates the liability and damages issues, he would be prejudiced because it would unduly delay the resolution of this case and would cause him to incur unnecessary expenses to prepare for two trials.

Defendant claims that, if the Court does not grant his motion for bifurcation, he will be prejudiced because (1) the jury may be confused by the complexity of the issues of liability and damages if tried together, and (2) the jury may "jump to the unwarranted conclusion" that Defendant withheld information from Plaintiff based on Defendant's alleged wrongdoings in his transaction with TriZetto. *See* Defendant's Memorandum of Law in Support of Bifurcation, dated June 6, 2005, at 11. At the time Defendant articulated these concerns, the Court had not

issued its Order denying Plaintiff's motion for leave to file a jury demand. Since the Court, rather than a jury, is to hear the evidence, Defendant's concerns are moot.

Finally, if the Court bifurcates the present case, then the Court may save time if it makes a finding of no liability. Specifically, if the Court finds that Defendant is not liable to Plaintiff, then it will not need to hear evidence regarding the issue of damages. However, if the Court finds that Defendant is liable, the Court will have to hear the evidence on damages and, given its schedule, it could be some time before the Court could schedule a trial on damages, thus delaying the final resolution of this case.

In sum, the decision to bifurcate the liability and damages issues is well within the Court's discretion. Although it appears that there is no reason to deny bifurcation due to the fact that the issues are completely separate and there will be little, if any, duplicitive evidence and testimony presented at trial, it is more economical and less burdensome on the Court's schedule for the parties to present their evidence on both issues at one time. In addition, the Court finds that there will be no undue prejudice to either party resulting from denying bifurcation. Keeping all these factors in mind, the Court denies Defendant's motion for bifurcation at this time. However, the Court will structure the trial in a way that requires the parties to present all evidence of liability first followed by their evidence regarding damages. Thus, if, after hearing all of the evidence regarding liability, the Court determines that Plaintiff has not established his claims against Defendant, the parties will not have to present their evidence regarding damages, thereby accomplishing the same goal as a bifurcated trial.[1]

---

[1] The Court hereby instructs counsel to be prepared to further discuss the details of this issue at the Final Pre-Trial Conference.

**B.     Preclusion of Plaintiff's experts**

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or Rule 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1).

Rule 26(a)(2) governs the disclosure of material that is to be provided through an expert witness, and it requires, in part, that the disclosure of expert evidence be made "at the time and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(C). The Court's Scheduling Order, dated June 25, 2001, set the deadline for expert disclosure for Plaintiff at ninety days prior to the December 31, 2001 discovery deadline. *See* Dkt. No. 7, at 2, ¶ (a)(1). Plaintiff served his expert disclosure on May 5, 2005, more than three years after the deadline, which was not extended. *See* Defendant's Motion for Bifurcation and to Strike Plaintiff's Expert Report as Untimely, dated June 6, 2005, at Exhibit "C." Since it is undisputed that Plaintiff filed his expert disclosure well after the Court's deadline, he is barred from using his expert witness' report and testimony during trial unless (1) he can show that substantial justification exists for his failure to disclose the information in a timely manner, or (2) absent a substantial justification, he can show that his conduct was harmless.

In determining whether to exclude trial testimony under Rule 37(c)(1), a court considers (1) the surprise or prejudice that the non-moving party will suffer; (2) the ability of the non-moving party to cure that prejudice; (3) "the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the

court; and (4) bad faith or willfulness [of the moving party] in failing to comply with the district court's [scheduling] order." *In the Matter of Kreta Shipping, S.A.,* 181 F.R.D. 273, 277 (S.D.N.Y. 1998) (quotation omitted). The court should also consider the importance of the evidence that may be precluded. *See Softel, Inc. v. Dragon Med. & Scientific Communications, Inc.,* 118 F.3d 955, 961 (2d Cir. 1997) (citation omitted). The purpose of Rule 37(c)(1) is to prevent sandbagging an adversary with undisclosed evidence. *See Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.,* 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) (citation omitted). Although the language of Rule 37(c)(1) implies automatic preclusion, "courts recognize that preclusion is a drastic remedy and therefore exercise discretion and caution." *Ventra v. United States,* 121 F. Supp. 2d 326, 332 (S.D.N.Y. 2000) (citations omitted). In fact, "preclusion of expert opinion testimony is generally ordered only where the court finds that the party's failure to comply with the requirements was both unjustified and prejudicial." *DiPirro v. United States,* 43 F. Supp. 2d 327, 340 (W.D.N.Y. 1999) (citations omitted).

  First, the lateness of Plaintiff's expert disclosure prejudices Defendant. It was reasonable for Defendant to rely on deadlines that the Court set in its Scheduling Order. The lateness of Plaintiff's expert disclosure and the fact that Plaintiff served this disclosure on the eve of trial afford Defendant little time to prepare for cross-examination and to procure a proper rebuttal witness. Although it is true that the Court could continue the trial to alleviate some of Defendant's burden, the fact remains that Defendant would have to expend additional time and money to compensate for Plaintiff's failure to file his disclosure in a timely fashion.

  In addition, if the Court were to allow Plaintiff to use his experts' testimony and reports at trial, it would have to, as stated above, continue this trial to a later date in fairness to

Defendant. This puts an unnecessary burden on the Court's schedule and would delay this action's resolution even longer.

Moreover, Plaintiff has failed to present any evidence of good cause that shows that he made his untimely expert disclosure in good faith. Plaintiff's only argument is that the issues regarding damages that require expert testimony arose only recently after this Court issued its November 20, 2004 Memorandum-Decision and Order denying both parties' motions for summary judgment. Specifically, Plaintiff argues that the questions of fact regarding damages were not totally apparent until this Court denied the parties' summary judgment motions.

This argument is incredible. Plaintiff has the burden to show that he suffered damages. *See Manley v. AmBase Corp.,* 126 F. Supp. 2d 743, 755 (S.D.N.Y. 2001) (citations omitted). It is difficult to believe that Plaintiff would have filed a motion for summary judgment without seriously considering whether he would need expert testimony to prove his claim. If the Court is to believe that Plaintiff did not appreciate the complexity of the issue of damages until after this Court's November decision, then Plaintiff's lack of judgment caused him to spend inadequate time in carefully considering the evidence as it relates to all the issues in this case. The fact that Plaintiff thought that the Court would resolve this case at the summary judgment stage does not excuse his failure to conduct thorough discovery and retain experts to support his theories on damages. In addition, if Plaintiff honestly did not truly appreciate the complexity of the issue of damages until the Court's November 20, 2004 Order, then he should have retained experts and filed his expert disclosure much earlier than May 5, 2005. Plaintiff easily could have requested permission to file a late expert disclosure when he filed his February 9, 2005 motion for leave to file a late jury demand. Instead, Plaintiff chose to wait until the eve of trial. Plaintiff offers no

-10-

explanation for this delay.

Finally, both parties agree that the issue of damages is rather complex. Therefore, expert testimony may be useful in aiding the Court in making a determination on damages if it finds liability. However, this is the only factor that weighs in favor of granting Plaintiff leave to file his expert disclosure three years after the Court's deadline, and, since this is a bench trial, the Court is more than able, if needed, to calculate damages on its own. Accordingly, the Court denies Plaintiff's cross-motion and grants Defendant's motion to strike Plaintiff's expert reports as untimely.

**C.     Impeachment evidence**

Rule 609(a)(2) of the Federal Rules of Evidence provides that "[f]or the purpose of attacking the credibility of a witness . . . , evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment." Fed. R. Evid. 609(a)(2). However, "Rule 609(b) . . . bars the use of a conviction more than ten years old to attack a witness's credibility unless 'the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.'" *Zinman v. Black & Decker (U.S.), Inc.,* 983 F.2d 431, 434 (2d Cir. 1993) (quotation omitted). "[C]onvictions over ten years old [should] be admitted 'very rarely and only in exceptional circumstances.'" *Id.* (quotation omitted). Rule 609(b) also prohibits the admission of convictions more than ten years old "unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence . . . ." Fed. R. Evid. 609(b).

The parties agree that Franc Richardson's conviction of fraud is ordinarily admissible under Rule 609. The parties also agree that Defendant received adequate notice of Plaintiff's intent to offer evidence of Mr. Richardson's conviction at trial. Nonetheless, Defendant asserts that, because Mr. Richardson's conviction is more than ten years old, it should be excluded because its prejudicial effect substantially outweighs its probative value.

Plaintiff argues that Mr. Richardson's conviction is highly probative. Mr. Richardson was convicted of a felony and served four years of a six-year sentence. Mr. Richardson was found guilty of submitting false information for the purpose of obtaining a $565,000.00 SBA loan, aiding and assisting four persons to make false claims on their tax returns, and transporting five checks that he knew to be stolen or procured by fraud.

Plaintiff conducted Mr. Richardson's deposition in December 2001. At that time, Plaintiff requested that Mr. Richardson produce his laptop and/or the directory of documents from that computer that showed when a particular document, a letter allegedly given to Plaintiff regarding the sale of FinServ, had been created. Mr. Richardson has never turned over these pieces of evidence. However, in the latter half of 2004, Mr. Richardson presented the letter itself to Plaintiff's counsel. The letter was purportedly created in August 1999.

Plaintiff asserts that, because there is no physical evidence that can show when the August 1999 letter was created, the Court will have to rely upon Mr. Richardson's testimony. Therefore, Mr. Richardson's credibility is highly relevant and substantially outweighs the prejudicial effect of his prior felony conviction. *See Zinman,* 983 F.2d at 434 (citation omitted). Given the fact that the Court, rather than a jury, will be hearing this case, the prejudicial effect of the conviction is moot. The Court is already aware of the conviction and will, since it is

probative, take it into account when determining the credibility of Mr. Richardson. Accordingly, the Court will allow Plaintiff to use Mr. Richardson's past conviction for impeachment purposes.

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, for bifurcation of the issues of liability and damages is **DENIED**; and the Court further

**ORDERS** that Defendant's motion, pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, to preclude Plaintiff from using expert testimony and reports with regard to the issue of damages is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for leave to file a late expert disclosure is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for the use of the prior conviction of Franc Richardson, for impeachment purposes only, is **GRANTED.**

**IT IS SO ORDERED.**

Dated: July 22 , 2005
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Chief United States District Court Judge